REIBER, C.J., dissenting.
¶ 33. I agree with the majority that the trial court erred in excluding the complainant's impeachment evidence. I also agree with the harmless-error analysis the majority follows, in which the Court considers (1) the strength of the State's case, including the strength of the defense, and (2) the strength of the erroneously excluded evidence. But I do not agree that the State's case here was weak or that the excluded evidence was highly significant. I would find harmless error. Therefore, I respectfully dissent.
¶ 34. In general, this Court has considered the State's case weak when the evidence consists primarily of the complainant's and defendant's testimony, with little or no corroborating evidence. State v. Herring, 2010 VT 106, ¶ 10, 189 Vt. 211, 19 A.3d 81 (finding error not harmless when the corroborating evidence was "all contested and not objectively inviolable," and there was "no independently incriminating proof beyond a reasonable doubt"). In those circumstances, which we have characterized as a "swearing contest" between the complainant and the defendant, we have frequently found errors not harmless. See ibr.US_Case_Law.Schema.Case_Body:v1">id. For example, in State v. Groce, there was no physical evidence to corroborate the complainant's testimony, and the witness testimony was weak. 2014 VT 122, ¶¶ 20-21, 198 Vt. 74, 111 A.3d 1273. The Court stated:
Although other witnesses testified as to events immediately before and after the incident, only defendant and complainant testified as to what happened during the alleged sexual encounter.... Without more, this evidence is not strong enough to conclude that the jury would have convicted beyond a reasonable doubt without the erroneously admitted hearsay evidence.
Id. ¶ 21 ; see also State v. Lipka, 174 Vt. 377, 385, 817 A.2d 27, 34 (2002) (describing case as "a classic swearing contest" and finding error not harmless where there was no evidence to corroborate complainant's testimony). In contrast, in State v. Oscarson, this Court concluded the error was harmless with regard to the second conviction in the case because the complainant's testimony was "strongly corroborat[ed]" by other evidence, and the defendant's testimony was wholly uncorroborated. 2004 VT 4, ¶¶ 54, 57, 61, 176 Vt. 176, 845 A.2d 337 ; see also State v. Haskins, 2016 VT 79, ¶ 30, 202 Vt. 461, 150 A.3d 202 (finding case "not a swearing contest between a complainant and a defendant" because "there was substantial additional inculpatory evidence from multiple witnesses pointing to defendant, and the excluded testimony directly attacked the credibility of a nonwitness, not a complainant").
¶ 35. The majority categorizes this case as a swearing contest, saying that "the jury was faced with the competing narratives of complainant and defendant," so that the "outcome ... hinged on the credibility of these two individuals." Ante, ¶ 29. This is not accurate. Complainant and defendant certainly presented conflicting accounts, but complainants and defendants generally do. What matters is whether there is "more" than conflicting accounts, and here there was substantially more evidence. Cf. Groce, 2014 VT 122, ¶¶ 20-21, 198 Vt. 74, 111 A.3d 1273 (saying evidence consisting of witness testimony regarding *599 the time frame of the alleged incident, complainant and defendant testimony about the alleged sexual assault, and no physical evidence, was insufficient "without more," so error was not harmless). The State provided overwhelming direct evidence of complainant's physical injuries and very strong circumstantial evidence that defendant caused the injuries, all of which corroborated complainant's statements. In addition, defendant's testimony was entirely uncorroborated. In these respects, this case is closely analogous to Haskins. 2016 VT 79, ¶¶ 18, 25, 32, 202 Vt. 461, 150 A.3d 202. Just as in Haskins, this case is not a "swearing contest." Id. ¶ 30.
¶ 36. Further, looking only at the evidence apart from complainant's statements, the State's case was strong circumstantially. The clerk at the Motel 6 on Putney Road in Brattleboro testified that complainant was uninjured earlier on the evening in question; there was yelling and banging in the motel room that defendant rented, and someone who sounded like complainant seemed to be present and sobbing; and after the disturbances in defendant's room, a sobbing woman walked across the parking lot away from the direction of defendant's room, her shoes making the same distinctive sound as complainant's. Police officers and medical responders testified that complainant made an emergency phone call soon after midnight, and they found her crying by the side of Putney Road, wearing no shoes. They also testified, together with an emergency room nurse, that she had bruising around her neck, which was covered with makeup, and bruising and swelling around both eyes, which was fresh. The evidence included pictures of these injuries. After speaking with complainant, the police officers investigated the motel room; they found clothes and pills scattered around the floor, and the bathroom door was missing. A state trooper testified that defendant was pulled over for speeding around one o'clock in the morning approximately seventy-seven miles north of Brattleboro, and he was processed for driving while intoxicated.
¶ 37. Just as in Haskins, this evidence created a strong case for the State. See 2016 VT 79, ¶ 18, 202 Vt. 461, 150 A.3d 202 (finding State's case strong despite "conflicting testimony" because "the State presented substantial evidence identifying defendant as the person who stabbed the victim"). There was overwhelming evidence that complainant was injured and that the injuries occurred around the same time that she was with defendant, and there was strong circumstantial evidence that defendant caused the injuries.
¶ 38. Moreover, also as in Haskins, the defense was weak. See id. ¶ 25 (stating that "there was very little evidence to bolster defendant's theory"). Defendant's testimony was attenuated. He testified that he and complainant argued in the motel room, she became violent toward him, and he left to sleep in his car. Around midnight, she woke him so he could drive her to the store, and on the way, she became violent toward him again. When she got out of his car, she began to kick it hard enough to damage it. He pushed her away from his car and drove away quickly, leaving her completely uninjured and wearing her shoes. He also said the motel room was not in disarray when he left it.
¶ 39. Complainant's version of events is corroborated by the evidence of her injuries, which were consistent with the reported assault, the disarray of the hotel room, and the timing from the clerk's testimony and the emergency phone call. There is no evidence to corroborate defendant's story, and there is evidence to contradict it. Defendant claimed he left complainant uninjured around midnight, and soon afterwards *600 police officers and medical personnel found her with covered-up bruises around her neck and fresh bruises around her eyes. There was evidence that defendant's left hand was swollen, which defendant testified was due to an earlier injury. There was no evidence of other injuries. Defendant did not provide any evidence that his car was damaged.
¶ 40. To be sure, even when the State's case is strong, an error is not harmless if it contributed to the conviction. See Oscarson, 2004 VT 4, ¶ 46, 176 Vt. 176, 845 A.2d 337 (holding error not harmless because Court could not "say beyond a reasonable doubt that the erroneously admitted evidence did not contribute to the jury's verdict" (quotation and alteration omitted) ). "We treat the damaging potential of the excluded impeachment evidence as fully realized ...." State v. Malshuk, 2004 VT 54, ¶ 14, 177 Vt. 475, 857 A.2d 282 (mem.). Where the excluded evidence is of "limited probative value" or likely to have minimal impact, the error is more likely to be harmless. See State v. Atherton, 2016 VT 25, ¶ 25, 201 Vt. 512, 144 A.3d 311 (finding harmless erroneous exclusion of evidence that witness had prior conviction for providing false information to police officer because "its impact would have been minimal given the limited and cumulative nature" of witness's testimony); State v. Fuller, 168 Vt. 396, 408-09, 721 A.2d 475, 484 (1998) (finding excluded evidence had "limited probative value at best" and concluding error was harmless, given weakness of excluded evidence and strength of other evidence supporting State's case).
¶ 41. Here, the excluded evidence was a "self-authenticating document" indicating that complainant had previously been convicted of providing false information to a police officer. Only the fact of the conviction was offered, "without any discussion about how, why, [or] where." As defense counsel represented to the trial court, this evidence was "relatively innocuous." Certainly, the context of the conviction-an apparently false claim that complainant's father had assaulted her-could have had an impact on the jury's deliberations. But the context was never excluded; it was not offered. What was excluded was merely the fact of the conviction. As in Haskins, "[t]he excluded [evidence] did not go to the ultimate issue of defendant's guilt or innocence," and "it is difficult to say that the excluded [evidence] had any real significance." 2016 VT 79, ¶ 30, 202 Vt. 461, 150 A.3d 202 ; see also Oscarson, 2004 VT 4, ¶ 61, 176 Vt. 176, 845 A.2d 337 (finding harmless error where the error was "tangential" to State's case). I cannot conclude that the conviction document alone could so shake the jury's assessment of the scope and depth of the State's evidence as to change its verdict. Given the strength of the State's case and the minimal value and impact of the excluded evidence, I would hold that the error was harmless. I respectfully dissent.
¶ 42. I am authorized to state that Justice Carroll joins this dissent.